UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ELOINA ROGERS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:17-cv-01079-JDP<br><br>ORDER ON SOCIAL SECURITY APPEAL<br><br>ECF No. 1 |

Maria Eloina Rogers ("claimant") challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security benefits. ECF No. 1. The case is submitted on the parties' briefs, ECF Nos. 17, 19. We will affirm the decision of the Commissioner.

On September 16, 2013, claimant applied for a period of disability and disability insurance benefits, claiming that she became disabled on July 8, 2013. On December 21, 2015, an Administrative Law Judge ("ALJ") held a hearing. On April 20, 2016, the ALJ denied claimant's application. AR 17-27. After unsuccessfully seeking review by the Appeals Council, claimant filed the present action on August 11, 2017.

## I. STANDARD OF REVIEW

Our review is limited: On appeal, we ask only whether substantial evidence supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla of evidence but may be less than a preponderance. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). We will uphold the ALJ's decision if it is rational, even if there is another rational interpretation of the evidence, because we may not substitute our judgment for that of the Commissioner. *Id*. We review only the reasons provided by the Commissioner in the disability determination and may not affirm based on a ground upon which the Commissioner did not rely. *See Revels*, 874 F.3d at 654.

## II. ANALYSIS

The ALJ determines eligibility for Social Security benefits in a five-step sequential evaluation process, asking: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in the regulations; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018); 20 C.F.R. § 416.920. The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At step one, the ALJ found that claimant had not engaged in substantial gainful activity since July 8, 2013. AR 22. At step two, the ALJ found that claimant had the severe impairment of fibromyalgia, and additional nonsevere impairments of anxiety, depression, degenerative disc disease of the cervical spine and lumbar spine, osteoarthritis, and migraines. AR 22-24. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or exceeded the severity of the listed impairments. AR 24. Before proceeding to step four, the ALJ found that claimant had the RFC to perform a wide range of medium work, with some limitations. AR 24-26. At step four, the ALJ found that claimant could perform past

relevant work. AR 26-27.

Claimant makes three arguments on appeal: (1) that the ALJ's determination at step two is not supported by substantial evidence because the ALJ failed to find that claimant has a severe psychiatric condition and a severe migraine condition; (2) that the ALJ failed to make a proper credibility determination regarding claimant's testimony; and (3) that the ALJ's determination of claimant's residual functional capacity ("RFC") prior to step four is not supported by substantial evidence. We consider each of these arguments below.

**A. Severe Impairments**

Claimant argues that the ALJ should have found additional severe impairments of anxiety, depression, and migraine headaches at step two of the analysis. The step two inquiry is a "screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) (internal citations and quotation marks omitted). The ALJ carefully considered the evidence of claimant's impairments at step two. AR 22-24. Specifically, the ALJ found that claimant's "mental impairments of anxiety and depression considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities . . . ." AR 22. In support of this finding, the ALJ examined claimant's medical history and statements, along with the opinions of two doctors, and applied that evidence to the four broad functional areas set out in the disability regulations for evaluating mental disorders. AR 22-24.

Separately, the ALJ considered claimant's impairments of osteoarthritis, migraines, and degenerative disc disease of the cervical spine and lumbar spine, founding them to be non-severe. AR 24. The ALJ recognized that claimant's migraines were managed with medication based upon the medical record and claimant's own statement. *Id.* The ALJ further noted that the claimant's back impairments were characterized as "minimal" in her medical records. *Id.* Finally, the ALJ found no evidence in the record relating to claimant's osteoarthritis. *Id.* On these bases, the ALJ found the impairments of osteoarthritis, migraines, and degenerative disc disease of the cervical and lumbar spine to be non-severe. *Id.* We find that the ALJ's determination that claimant's other impairments were non-severe was supported by substantial

3

evidence.

Furthermore, when an ALJ finds at least one severe impairment and proceeds with the evaluation, there is no reversible error for a failure to find additional severe impairments at step two. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). In *Lewis*, the ALJ did not count claimant's bursitis as a severe impairment at step two but considered the limitations imposed by bursitis at step four. *Id.* The court found this analysis to be sufficient under the substantial evidence standard and stated that if there were any error, that error would be harmless. *Id.* Similarly, in this case, the ALJ found the severe impairment of fibromyalgia at step two and considered all of claimant's impairments, whether severe or non-severe, when evaluating claimant's RFC before arriving at step four. AR 22-27. Thus, the categorization of claimant's anxiety, depression, and migraine headaches as non-severe impairments at step two is inconsequential because the ALJ considered the limiting effects of these impairments in determining claimant's RFC. Any error by the ALJ at step two would have been harmless.

**B. Credibility Finding**

Claimant argues that the ALJ's discounted her testimony without specific reasons supported by the record. ECF No. 17 at 12. "An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal citations omitted). An ALJ must engage in a two-step analysis to determine whether a claimant's testimony concerning subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "[T]he claimant is not required to show her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* Second, if there is no evidence of malingering, the ALJ may reject a claimant's testimony about the severity of the pain "only by offering specific, clear and convincing reasons for doing so." *Id*. at 1015; *see also Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (reaffirming the application of the two-step analysis

4

in *Garrison* after Social Security Ruling 16-3p (2016)).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In assessing a claimant's credibility, an ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citations omitted).

The ALJ followed the two-step analysis and found that claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that claimant's statements about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the record. AR 25. The ALJ considered claimant's testimony about her daily activities, including claimant's statement that she "walks her dog, pays bills, and goes out alone." AR 25. The ALJ considered medical evidence and medical opinions as well, which the ALJ found to show that claimant's symptoms were not as limiting as she claimed. AR 22-26. Three doctors opined that claimant had the RFC for medium work, which included finding that claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours, and frequently climb, stoop, kneel, crawl and crouch. AR 25-26, 63-65, 78-80, 379-84. Thus, the ALJ offered "specific, clear and convincing reasons" for partially discounting claimant's statements about the limiting effects of her symptoms. *Garrison*, 759 F.3d at 1015.

Citing *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), claimant argues that the ALJ improperly used daily activities for the credibility determination. ECF No. 14. In *Orn*, the ALJ

5

determined that the claimant's daily activities of reading, watching television, and coloring were transferable skills for the workplace—and that these activities undermined the credibility of claimant's statements about her functional capacity. *See Orn*, 495 F.3d at 639. The Ninth Circuit reversed the ALJ's determination, noting that "the mere fact that a claimant has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (internal citation and quotation marks omitted). In contrast to *Orn*, the ALJ in this case did not determine that claimant's daily activities demonstrated transferable skills for the workplace. The ALJ simply considered evidence of claimant's daily activities, along with the rest of the evidence in the record, to make a partially adverse credibility determination.[1] AR 25.

Furthermore, even if it were improper for the ALJ to consider claimant's daily activities, there would be nothing more than harmless error in this case, because the extensive medical evidence provides clear and convincing reasons supported by substantial evidence for the ALJ's credibility determination. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ took into account claimant's fibromyalgia, arthritis, and depression. AR 25. Specifically, the ALJ considered the claimant's medical records, which showed that claimant had only scattered tender points from her fibromyalgia. AR 25 (citing medical records at AR 302, 379-86, 485, 642). The ALJ further considered and gave great weight to the medical opinions of Dr. Afra, Dr. Nasrabadi, and Dr. Haaland, who opined that claimant had the capacity to perform medium work with some limitations, after examining claimant and/or reviewing claimant's medical records for fibromyalgia, arthritis, migraines, anxiety, and depression. AR 25-26 (citing medical opinions and records at AR 56-66, 68-81, 379-86). Thus, the ALJ's

---

[1] The ALJ weighed plaintiff's daily activities for the credibility determination:

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant reported no problems with personal care. She also reported that she walks her dog, pays bills, and goes out alone (Exhibit 5E). She was noted to have done yoga at her local gym. After doing yoga, she did not need to take her sleep medication (Exhibit 6F149). These activities indicate that her fibromyalgia is not as significant as she has alleged.

AR 25.

assessment was supported by substantial evidence; he gave clear and convincing reasons for his partially adverse credibility determination, and any error in the use of claimant's daily activities was harmless. AR 26; *see Carmickle*, 533 F.3d at 1162.

**C. RFC Determination**

Claimant argues that Dr. Fine's RFC opinion was not accorded proper weight and consideration by the ALJ, resulting in an erroneous RFC determination by the ALJ. ECF No. 17 at 15-18. A claimant's RFC is what she can still do despite her physical, mental, and other limitations. *See Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir. 2001) (citing 20 C.F.R. pt. 404, subpt. P, app. 2, 200.00(c)). The ALJ's determination of a claimant's RFC must be based on the medical opinions and the totality of the record. *See* 20 C.F.R. §§ 416.927(b), 416.946(c). In determining an RFC, the ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The weight given to medical opinions depends in part on whether the opinions are proffered by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to become acquainted with and observe the patient as an individual. *See id.* If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different independent clinical findings, the ALJ may resolve the conflict. *See Andrews*, 53 F.3d at 1041. A contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *See Lester*, 81 F.3d at 830.

The ALJ's reasoning is guided by factors laid out in 20 C.F.R. § 404.1527(c). These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the extent that the opinion is supported by evidence, and the consistency of the opinion with the record. *Id.*

In this case, the ALJ gave great weight to the opinions of Dr. Afra, an examining physician, and Dr. Nasrabadi and Dr. Haaland, who were non-examining physicians. AR 26. Those doctors all opined that claimant's RFC was consistent with performing a wide range of

medium work—though with some limitations. *Id.* In contrast, Dr. Fine opined that claimant's RFC does not allow her to perform even low-stress jobs. *Id.*

The ALJ found the opinions of Dr. Afra, Dr. Nasrabadi, and Dr. Haaland to be "internally consistent and consistent with the evidence as a whole." AR 26. In contrast, the ALJ found Dr. Fine's opinion to be inconsistent with claimant's activities and the medical evidence and so gave it little weight. *Id.* The ALJ also discounted Dr. Fine's opinion because he only saw the claimant once. *Id.* Claimant argues that the treating physician's opinion must be given more weight than opinions of nontreating physicians, citing *Jamerson v. Chater*, 112 F.3d 1064 (9th Cir. 1995). ECF No. 17 at 17-18. However, as discussed above, the ALJ may decide to give a treating physician's opinion less weight than a nontreating physician's opinion. *See Andrews*, 53 F.3d at 1041. In this case, the ALJ gave specific and legitimate reasons for according the treating physician's opinion little weight and the conflicting examining physician's opinion great weight. *See* AR 25-26 (recognizing that Dr. Afra's opinion should be afforded great weight because it is consistent with the medical evidence, claimant's activities, and the opinions of Dr. Haaland and Dr. Nasrabadi; but discounting Dr. Fine's opinion because he only saw claimant once and his opinion is inconsistent with the other evidence in the record). The ALJ's determinations regarding the weight of the medical opinions informing the ALJ's ultimate RFC determination are supported by substantial evidence. Therefore, claimant's third claim for reversal of the ALJ's decision must fail as well.

### III. CONCLUSION AND ORDER

Claimant Maria Eloina Rogers's appeal from the administrative decision of the Commissioner of Social Security is denied, and the decision of the Commissioner of Social Security is affirmed. The clerk of court is directed to (1) enter judgment in favor of defendant and (2) close this case.

IT IS SO ORDERED.

Dated: February 22, 2019

_____
UNITED STATES MAGISTRATE JUDGE

No. 204